IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| ROSINA C. BROWN, | ) Civil Action No. 3:09-813-CMC-JRM |
| Plaintiff, | ) |
| vs. | ) |
| LIEUTENANT GOVERNOR'S OFFICE ON AGING; ANTHONY KESTER; SUSAN LIFSEY THERIOT; AND CORNELIA GIBBONS, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES, | ) **REPORT AND RECOMMENDATION** |
| Defendants. | ) |

Plaintiff, Rosina C. Brown ("Brown"), filed this action on March 30, 2009. She filed an amended complaint on July 2, 2009. Brown alleges claims under 42 U.S.C. § 1983 and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.[1] Defendants are the Lieutenant Governor's Office on Aging ("LGOA"); Anthony Kester ("Kester"), the former Finance Director and current Acting Director of the LGOA; Susan Lifsey Theriot ("Theriot), the former Human Resource Director and current Program Manager of the LGOA; and Cornelia Gibbons ("Gibbons"), the former Director of the LGOA. On July 13, 2009, Defendants filed a motion for partial dismissal (as to Brown's FMLA claim) pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Brown filed a

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

memorandum in opposition to Defendants' motion on July 31, 2009, and Defendants filed a reply on August 4, 2009.

## STANDARD MOTION TO DISMISS

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the fundamental question of whether a court is competent to adjudicate the claims brought before it. Generally, challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." Thigpen v. United States, 800 F.2d 393, 401 n. 15 (4th Cir.1986), rejected on other grounds, Sheridan v. United States, 487 U.S. 392 (1988). A "facial attack" questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. Id. If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. Id.

A "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.1991) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)); Trentacosta v. Frontier Pac. Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Richmond, 945 F.2d at 768 (citations omitted). A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citations omitted).

2

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court recently stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.' " Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

## **FACTS IN THE LIGHT MOST FAVORABLE TO PLAINTIFF**

Brown, who has a Masters degree in Public Health, began employment with the South Carolina Department of Health and Human Services as a Program Coordinator in December 1996. In December 2001, Brown transferred to the Office on Aging under Health and Human Services as a Program Coordinator. In approximately June/July 2004, the Office on Aging was transferred to the Lieutenant Governor's Office, and made a separate agency. Brown was diagnosed with Systemic Lupus in 1986. The disease restricts her activities and causes a loss of mobility, a weakened immune system, and increased susceptibility to illness and disease. As a result, she had to take leave on a periodic basis. Amended Complaint ("AC"), Paras. 8-9, 11.

As a Program Coordinator, Brown met weekly with the other six Program Coordinators to discuss job duties and share necessary information. She had continuous contact with ten Area Agencies for which she had responsibility of monitoring the finances (each Agency received approximately $350,000 in grant monies). In June 2005, Brown's job was changed to that of S.C. Access Coordinator, which she alleges was a significant demotion and consisted of being a data entry person, inputting data into the computer. AC, Paras. 10-11.

Brown continuously advised Defendants that the S.C. Access Program was not working properly as it was too difficult and cumbersome for Seniors and their families to use. She also advised Defendants that sitting at a computer all day worsened the arthritis portion of her disease, but Defendants took no action to remedy her problems or assist her. She claims that Defendants began an intentional course of action to isolate her from other employees, requiring her to not have contact with other employees (which Brown claims was needed for her to perform her job) and to contact her supervisor before leaving her office. AC, Paras. 12-14.

Beginning in June 2005, Defendant Kester required Brown to have a written statement from a doctor for any sick leave, including a doctor's appointment, in contrast to what was required of other employees and in contrast to South Carolina policy requiring a doctor's statement only if an employee is out sick for over three days. Brown's physician filled out the LGOA's employee Medical Certification FMLA form on August 30, 2005, stating that Brown's condition might require her to be out of work on sick leave periodically. AC, Para. 15.

In September 2005, Theriot and Kester conducted a counseling session with Brown. They limited her time for water and bathroom breaks, and required her to notify and obtain approval from her supervisor for any time she was away from her office. In January 2006, Defendants told Brown

that she must have medical documentation for sick leave for consecutive days or more than one day within the same work week. AC, Paras. 16-17.

Brown suffered fractures to both of her feet as a result of her Systemic Lupus. She stayed out of the office from April 16 to 18 (Monday to Wednesday), 2007. Brown had a disability hearing scheduled for April 19, 2007. In a conference call on Wednesday, April 18, Kester, Theriot, and Director Curtis Loftis told Brown that if she did not come to work on April 19, she would be fired. She arrived at work on April 19, using a walker. She gave Theriot a statement from her doctor for her three day absence. Theriot refused to accept the statement and required Brown to have her doctor fax another statement stating she needed to use a walker, which was done. Theriot told Brown she could not attend her disability hearing until the additional doctor's statement was faxed to him. AC, Para. 18.

## **DISCUSSION**

Brown alleges (Second Cause of Action) that Defendants considered her FMLA qualified leave as a factor in denying her equal employment benefits, demoting her, and causing her to take disability retirement. She claims that Defendants retaliated against her and they interfered with, restrained, and denied her rights under the FMLA.[2] AC at 7. Brown requests actual and punitive damages as well as reinstatement. Defendants contend that their motion for partial dismissal should be granted because: (1) Brown's claims against Defendants in their official capacities are barred

---

[2]Brown also alleges (First Cause of Action) that the natural Defendants, in their individual capacities, violated her First Amendment rights. This claim is not the subject of Defendants' motion to dismiss.

under the Eleventh Amendment; (2) the FMLA does not authorize individual liability against state supervisors; and (3) the individual defendants are entitled to qualified immunity.

### 1. Official Capacity/Monetary Claims

The LGOA and Defendants Kester, Theriot, and Gibbons (the natural defendants) in their official capacities contend that Brown's claims are barred by the Eleventh Amendment. Brown argues that Defendants are not entitled to Eleventh Amendment immunity.

It is recommended that Brown's claims for monetary damages against the LGOA and the natural Defendants in their official capacities be dismissed because they are barred by the Eleventh Amendment. Congress can abrogate the States' immunity from private suit pursuant to its power, conferred by § 5 of the Fourteenth Amendment, to enforce the substantive provisions of the Amendment "by appropriate legislation." Determining whether Congress has done so is a two-step inquiry. The first step involves examining the § 5 legislation to ascertain whether Congress intended to override the states' immunity, the second step requires the court to ascertain whether Congress validly exercised its § 5 power. Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363-365 (2001).

In Lizzi v. Alexander, 255 F.3d 128 (4th Cir.), cert. denied, 534 U.S. 108 (2002), the Fourth Circuit concluded that the FMLA did not exhibit the requisite "congruence and proportionality" and therefore held that, despite its intent to do so, Congress did not validly abrogate the States' Eleventh Amendment immunity from suit under the FMLA. Two years after Lizzi was decided, the Supreme Court held, in Nevada Dep't of Human Resources v. Hibbs, 538 U.S. 721 (2003), that Congress did validly exercise its power under § 5 of the Fourteenth Amendment with respect to the family-care provision of the FMLA. Thus, an FMLA claim against a state agency grounded in the family-care

6

provision off the FMLA is not barred by the Eleventh Amendment. This action, however, involves a self-care claim.[3]

Brown argues that Hibbs was silent as to the self-care provision, such that its reasoning should apply to the self-care provision. Review of Hibbs, however, reveals that certiorari was granted:

> to resolve a split among the Court of Appeals on the question whether an individual may sue a State for money damages in federal court for violation of § 2612(a)(1)(C).

Hibbs 538 U.S. at 725. Section 2612(a)(1)(C) specifically provides that eligible employees are entitled to a total of 12 workweeks of leave during a 12-month period:

> In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

29 U.S.C. § 2612(a)(1)(C). In the decision, the Supreme Court specifically held that "employees of the State of Nevada may recover money damages in the event of the State's failure to comply with the family-care provision of the Act." Hibbs, 538 U.S. at 725. Family leave is discussed in depth in the decision:

> This case turns, then on whether Congress acted within its constitutional authority when it sought to abrogate the States' immunity for purposes of the FMLA's family-leave provision.

Hibbs at 726. As the Seventh Circuit, in Toeller v. Wisconsin Dep't of Corrs., 461 F.3d 871 (7th Cir. 2006) noted:

---

[3]The FMLA includes a provision (the family-care provision) which allows an employee to obtain leave in order to care for a family member. See 29 U.S.C. § 2612(a)(1)(C). The Act also includes a provision (the self-care provision) which allows an employee to obtain leave in order to care for his or her own serious health condition. See 29 U.S.C. § 2612(a)(1)(D).

7

> the Supreme Court was careful throughout Hibbs to state that it was deciding a case about the family-leave part of the FMLA; one would be hard-pressed to find anything in that opinion hinting that the ruling extended to all of § 2612(a). If, therefore, the holding in Hibbs should be extended to the self-care subsection, we must find comparable justification in the statute for self-care to that which persuaded the Court for family-care.

Toeller, 461 F.3d at 879.

Since the ruling in Hibbs, five other circuits which have examined this issue have found that private suits for damages may not be brought against states for alleged violations of the FMLA, which arise under the Act's self-care provision. See Nelson v. University of Texas at Dallas, 535 F.3d 318, 321 (5th Cir.2008); Miles v. Bellfontaine Habilitation Ctr., 481 F.3d 1106, 1107 (8th Cir. 2007) (per curiam) Toeller v. Wisconsin Dep't of Corrs., 461 F.3d at 879; Touvell v. Ohio Dep't of Mental Retardation and Developmental Disabilities, 422 F.3d 392, 405 (6th Cir. 2005); Brockman v. Wyoming Dep't of Family Servs., 342 F.3d 1159, 1165 (10th Cir. 2003). The Third and Eleventh Circuits, in unpublished opinions, also upheld Eleventh Amendment immunity as to the self-care provision. Banks vs. Court of Common Pleas FJD, 2009 WL 2488941, *2 (3rd Cir. 2009); Batchelor v. South Florida Water Mgmt. Dist., 242 Fed.Appx. 652 (11th Cir. 2007). Additionally, although the First and Second Circuits have not addressed this issue post-Hibbs, their pre-Hibbs rulings are in accord with Lizzi and the view of the circuits that have addressed the issue since Hibbs. See Laro v. New Hampshire, 259 F.3d 1 (1st Cir. 2001); Hale v. Mann, 219 F.3d 61 (2nd Cir. 2000). Further, District Courts in the First and Ninth Circuits that have considered post-Hibbs Eleventh Amendment challenges to FMLA claims arising from the self-care provision of the Act have held that states and state agencies are immune from private suits. See Wilson v. Executive Office of Health and Human

Servs., 606 F. Supp. 2d 160 (D.Mass. 2009); Wennihan v. Arizona Health Care Cost Containment Sys., 515 F.Supp.2d 1040, 1046 (D.Ariz. 2005).

Brown also claims that Eleventh Amendment immunity should not bar this action because Lizzi has been overruled by the Fourth Circuit in two cases, Mezu v. Dolan, 75 Fed. Appx. 910 (4th Cir. 2003) and Montgomery v. Maryland, 72 Fed. Appx. 17 (4th Cir. 2003). These cases, however, are unpublished and thus are not precedential. See Hogan v. Carter, 85 F.3d 1113, 1118 (4th Cir. 1996)(en banc). Lizzi is a published opinion and, as such, is binding precedent until overruled by the United States Supreme Court or by the Fourth Circuit sitting en banc. See McMellon v. United States, 387 F.3d 329, 332-335 (4th Cir. 2004)(en banc). Further, the language upon which Brown relies is dicta. In Mezu, the Fourth Circuit noted that "the Supreme Court held in Hibbs that Congress did in fact intend to abrogate a state's Eleventh Amendment immunity and therefore an individual may sue a state for money damages under the FMLA[,]" but held that the plaintiff's FMLA claim was properly dismissed under Rule 12(b)(6) because "Mezu's complaint alleges no facts constituting a substantive violation of the FMLA." The Court alternatively noted that Mezu abandoned her FMLA claim on appeal, waiving review of the issue under Local Rule 34(b). Mezu, 75 Fed. Appx. at 913. In Montgomery, the Fourth Circuit observed that "the Supreme Court held [in Hibbs] that Congress effectively abrogated the States' Eleventh amendment immunity against causes of action based on the FMLA," 72 Fed. Appx. at 19, but proceeded to hold that Montgomery's FMLA claim was properly dismissed for a failure to state a claim upon which relief could be granted. Montgomery, 72 Fed. Appx. at 20.

### 2. **Official Capacity Claims/Injunctive Relief**

Defendants contend that Lizzi holds that state officials are not subject to suit under the FMLA in their official or individual capacities. Brown argues that her claim for injunctive relief (reinstatement) against the natural Defendants is not barred by the Eleventh Amendment pursuant to the Ex parte Young exception because she has pled a violation of federal law and a claim for prospective injunctive relief.

Private individuals or entities are not precluded from suing state officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law. See Ex parte Young, 209 U.S. 123, 157 (1908). The rationale for the Ex parte Young exception is the notion that when a state officer violates federal law, he is stripped of his official character, and thereby loses the cloak of state immunity. See id. at 159-160; Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 288 (1997); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102 (1984).

Plaintiff's claim against Defendant Gibbons for injunctive relief should be dismissed because Brown admits that Gibbons is no longer employed by the LGOA (see AC at 4). The Federal Rules of Civil Procedure provide:

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

Fed. R. Civ. P. 25(d).

In their reply memorandum, the natural Defendants argue for the first time that even if Lizzi does not foreclose FMLA claim against them in their official capacities, the Ex parte Young

exception does not apply because Brown is judicially estopped from claiming that she is eligible for reinstatement to her position because she separated from employment from the LGOA in April 2007 after she applied for and was found eligible for state disability retirement. Although Defendants have presented a copy of a "Final Agency Determination" from the Director of the South Carolina Retirement Systems stating that she adopts the recommendation of the reviewing officer that disability retirements should be approved for Rosina Brown, there are insufficient facts presented at this time to determine whether Brown is judicially estopped from claiming she is eligible for reinstatement.

### 3. **Individual Capacity Claims/Monetary Damages**

The natural Defendants, citing Lizzi, contend that they cannot be held liable in their individual capacities. Alternatively, they argue that even if the FMLA permits claims against state supervisors in their individual capacities, the law on this point was not "clearly established" such that they are entitled to qualified immunity.[4]

It is recommended that the motion to dismiss be granted as to the FMLA claims against the natural Defendants in their individual capacities. Pursuant to Lizzi, because the LGOA "enjoys Eleventh Amendment immunity for claims brought under the FMLA, the individual supervisors under the FMLA are protected by that same immunity." Lizzi, 255 F.3d at 138. As discussed above, Brown fails to show that Lizzi has been overruled as to the self-care provision of the FMLA.

---

[4]Brown did not address the natural Defendants' qualified immunity argument.

## CONCLUSION

Based on the foregoing, it is recommended that Defendants' motion for partial dismissal (Doc. 17) be granted as to Plaintiff's FMLA claims for monetary damages against all Defendants, granted as to Plaintiff's FMLA claim for injunctive relief against Defendants LGOA and Gibbons, and denied as to Plaintiff's FMLA claim for injunctive relief against Defendants Kester and Theriot in their official capacities.

Joseph R. McCrorey
United States Magistrate Judge

January 6, 2010
Columbia, South Carolina