**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Rosina C. Brown, ) | C/A No. 3:09-813-CMC-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION & ORDER** |
| ) | |
| Lieutenant Governor's Office on Aging and ) | |
| Anthony Kester, Susan Lifsey Theriot, and ) | |
| Cornelia Gibbons, in their official and individual ) | |
| capacities, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Through this action, Plaintiff seeks damages under 42 U.S.C. § 1983 and 29 U.S.C. § 2611

*et seq.*, the Family and Medical Leave Act ("FMLA"). The matter is currently before the court on

Defendants' motion to dismiss the FMLA claim. Consistent with the court's normal practice,

pretrial proceedings were referred to a magistrate judge. *See* 28 U.S.C. § 636(b)(1)(B) and Local

Rules 73.02(B)(2)(a) and 83.VII.02, *et seq.*, D.S.C. The magistrate judge recommended dismissal

of some, but not all, aspects of Plaintiff's FMLA claim.

The court has reviewed the record, the applicable law, the Report and Recommendation of

the magistrate judge ("Report"), and the parties' objections. For the reasons set forth below, the

court adopts the Report, with minor modifications addressed below.

**BACKGROUND**

Plaintiff's FMLA claim is founded on an allegation that Defendants retaliated against her

for taking self-care leave. *See* Dkt. No. 14 at 6-8 (First Am. Compl. ¶¶ 20-31). Defendants moved

to dismiss Plaintiff's FMLA claim pursuant to Fed. R. Civ. P. 12(b)(1) and (6), arguing that (1) the

FMLA claim is barred by the Eleventh Amendment to the extent Defendants are sued in their official

capacities; (2) individual liability is not available against state supervisory employees under the

FMLA; and (3) Defendants are entitled to qualified immunity to the extent sued in their individual

capacities.  Dkt. No. 17-1.[1]

## REPORT

The Report recommends dismissal of Plaintiff's FMLA claim except to the extent she

pursues  injunctive relief against Defendants Kester and Theriot in their official capacities.  The

Report makes this recommendation based on the following subordinate conclusions: (1) the claims

for damages pursued against the Lieutenant Governor's Office on Aging ("LGOA") and the

individual Defendants in their official capacities are barred by the Eleventh Amendment; (2) the

claims for injunctive relief (seeking reinstatement) pursued against Defendant Gibbons in her

official capacity is moot because Gibbons is no longer employed by the employer; (3) the claims for

injunctive relief pursued against Defendants Kester and Theriot in their official capacities may be

maintained in light of *Ex parte Young*;[2] and (4) the claims for damages pursued against Defendants

in their individual capacities are foreclosed by the second holding in *Lizzi v. Alexander*, 255 F.3d

128, 137-38 (4th Cir. 2001) (extending protection of the Eleventh Amendment to state supervisory

employees who are sued for damages under the FMLA).[3]  In concluding that the claims for

---

[1] For a more detailed recitation of the underlying facts, see Report at 3-5 (construing the facts in the light most favorable to Plaintiff).

[2] Although not expressly stated, the Report also implicitly concludes that a claim for injunctive relief may not be pursued directly against the LGOA.  There is no objection to this determination.

[3] This is the second of two holdings in *Lizzi* which are of significance to this action.  The first holding, that Congress had not validly abrogated the States' Eleventh Amendment immunity in enacting the FMLA's *self-care* provision, was drawn into question though not expressly overruled by *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003) (rejecting same reasoning as it applied

injunctive relief against Kester and Theriot should not be dismissed, the Report declined to make

a recommendation as to Defendants' late-raised judicial estoppel argument.

## OBJECTIONS

Plaintiff objects to these recommendations on four grounds. In her first two arguments, she

asserts that the Eleventh Amendment does not bar claims based on the FMLA's self-care provision.

In her third argument, she asserts that the Report errs in disregarding two unpublished Fourth Circuit

opinions. Finally, she argues that individual liability for damages is available against the

supervisory employees because "employer" as defined in the FMLA includes individual supervisory

employees of public agencies.

In their objection, Defendants Theriot and Kester concede that reinstatement might, as a

general matter, be an available remedy in a FMLA case pursued against state government

supervisory employees. They argue, nonetheless, that it is not available here because Plaintiff took

disability leave. This is, in essence, a reassertion of their argument for dismissal based on judicial

estoppel.

## STANDARD OF REVIEW

The magistrate judge makes only a recommendation to this court. The recommendation

has no presumptive weight, and the responsibility for making a final determination remains with

the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo*

determination of those portions of the Report to which specific objection is made, and the court

---

to the FMLA's *family-care* provision). The second holding in *Lizzi* extended a state's immunity to protect state supervisory employees from claims for damages under the FMLA. *Lizzi*, 255 F.3d 137-38 (noting state was the real party in interest and distinguishing claims under 42 U.S.C. § 1983 in light of significant differences in statutory language).

may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge,

or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). In the

absence of an objection, the court reviews the Report and Recommendation only for clear error.

*See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating

that "in the absence of a timely filed objection, a district court need not conduct a *de novo*

review, but instead must only satisfy itself that there is no clear error on the face of the record in

order to accept the recommendation") (citation omitted).

## DISCUSSION

In their motion to dismiss the FMLA claim, Defendants argue that all Defendants are entitled

to Eleventh Amendment immunity, in both their official and individual capacities, as to Plaintiff's

claims for both monetary and injunctive relief.[4] The Eleventh Amendment bars suits in federal court

for money damages against an "unconsenting State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

This immunity extends to "arm[s] of the State," *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,

429 U.S. 274, 280 (1974), including state agencies and state officers acting in their official capacity.

*Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995).

The Eleventh Amendment does not, however, preclude private suits against state officials

---

[4] Defendants seek dismissal under both Fed. R. Civ. P. 12(b)(1), which addresses dismissal for lack of subject matter jurisdiction, and Rule 12(b)(6), which addresses dismissal for failure to state a cognizable claim. The Fourth Circuit has not resolved which of these rules applies to a motion to dismiss on the basis of Eleventh Amendment immunity. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 481 (4th Cir. 2005) (stating in *dicta* that "Eleventh Amendment immunity does not limit a federal court's subject-matter jurisdiction" )*; Andrews v. Daw*, 201 F.3d 521, 525 n.2 (4th Cir. 2000) ("Our cases have been unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)."). Regardless of which rule applies, this court reaches the same result.

for prospective or declaratory relief designed to remedy ongoing violations of federal law.[5] *Ex parte Young*, 209 U.S. 123, 157 (1908); *see also Virginia v. Reinhard*, 568 F.3d 110 (4th Cir. 2009). Neither does the Eleventh Amendment normally preclude claims for damages pursued against government officials in their individual capacities; however, other forms of immunity, such as qualified immunity, may apply under specific circumstances. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (discussing qualified immunity); *South Carolina State Ports Auth. v. FMC*, 243 F.3d 165, 170 (4th Cir. 2001) (citing *Alden v. Maine*, 527 U.S. 706 (1999) (discussing the Eleventh Amendment and individual-capacity claims); *cf. Lizzi*, 255 F.3d at 137-38 (extending Eleventh Amendment immunity to supervisory employees sued in their individual capacities under the FMLA where the state is the real party in interest).

Congress may also abrogate the States' Eleventh Amendment immunity, but "only by stating unequivocally its desire to do so and only pursuant to a valid exercise of constitutional authority." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 484 (4th Cir. 2005) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996)).[6] Section 5 of the Fourteenth Amendment to the United States Constitution, the Amendment's enforcement provision, provides one (and possibly the only) basis on which Congress may, under specific circumstances, abrogate the States' sovereign immunity. *Hibbs*, 538 U.S. at 727 (noting that while Congress may abrogate the States'

---

[5] For present purposes, the court assumes without deciding that Plaintiff may seek reinstatement as a remedy for the alleged wrongful termination. To that extent, her claim is arguably one for an "ongoing violation" of federal law.

[6] States may also waive sovereign immunity by consent. *See, e.g.*, *AES Sparrows Point LNG, LLC v. Wilson*, 589 F.3d 721 (4th Cir. 2009); *see also Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985) ("[I]f a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action."). In the present case, there is no suggestion of waiver.

sovereign immunity under Section 5 of the Fourteenth Amendment, it may not do so "pursuant to its Article I power over commerce") (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976)). To support abrogation of Eleventh Amendment immunity under Section 5, the legislation must be "an appropriate remedy for identified constitutional violations." *Id*. at 728. The legislation must also be "congruent and proportional" to the injury being remedied or prevented. *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997).

## I.     Plaintiff's Objections

### A.  *Hibbs'* Application to Self-Care Leave

Plaintiff argues that *Hibbs*, which concluded that Congress validly abrogated the States' sovereign immunity as to the FMLA's *family-care* provision, "should . . . be interpreted to mean that the FMLA waives Eleventh Amendment immunity of states both as to family care leave and [as] to self care leave." Dkt. No. 32 at 1 (Pl.'s Obj. ¶ 1). In support of this argument, Plaintiff notes that "[t]he concurring opinions of Justices Souter, Ginsburg and Breyer specifically state that the FMLA is valid legislation applicable to the states." *Id.* Plaintiff relies, most particularly, on Justice Souter's statement that "the Family and Medical Leave Act is undoubtedly valid legislation, and application of the Act to the States is constitutional . . . ." Dkt. No. 21 at 2 (quoting *Hibbs*, 538 U.S. at 740). This statement is, however, only a general statement regarding the overall validity of the FMLA as it applies to the States. It does not include any reference to, much less discussion of, the FMLA's self-care provision, given that *Hibbs* only addressed the family-care provision and related concerns.[7]

_____

[7] Justice Souter's one-page concurrence was offered for the sole purpose of expressing his continued disagreement with the Court's generally expansive "view of the scope of congressional power under § 5 of the Fourteenth Amendment." 538 U.S. at 740. To the extent relevant to this matter, this purpose suggests that Justice Souter would likely view the FMLA's self-care provision

In contrast, as explained in the Report, every circuit court that has considered the issue after

*Hibbs* has concluded that Congress did not validly abrogate sovereign immunity as to the FMLA's

self-care provision. *See Nelson v. Univ. of Tex.*, 535 F.3d 318, 321 (5th Cir. 2008); *see also Toeller*

*v. Wis. Dep't of Corr.*, 461 F.3d 871, 877-79 (7th Cir. 2006); *Touvell v. Ohio Dep't of Mental*

*Retardation & Developmental Disabilities*, 422 F.3d 392, 399-400 (6th Cir. 2005); *Brockman v.*

*Wyo. Dep't of Family Servs.*, 342 F.3d 1159, 1164 (10th Cir. 2003); Dkt. No. 31 at 8. These courts

have distinguished the self-care provision from the family-care provision based on an understanding

of Congress's intent in passing the FMLA: The Act specifically "aims to protect the right to be free

from gender-based discrimination in the workplace." *Hibbs*, 538 U.S. at 728; *see also id.* at 728 n.2.

These interests are not implicated by the availability of self-care leave. *See Brockman*, 342 F.3d at

1164 ("Because the Supreme Court's analysis in *Hibbs* turned on the gender-based aspects of the

[the family-care leave provision], the self-care provision . . . is not implicated by that decision." ).

Though there may be a "colorable argument" that the self-care provision can be viewed as part of

the Act as a whole, and is therefore a valid abrogation of Eleventh Amendment immunity, other

courts have found this argument unpersuasive because, *inter alia*, "there is no showing . . . that

establishes any nexus between gender-neutral medical leave for one's own health conditions and the

prevention of discrimination on the basis of gender *on the part of states as employers*." *Id.* at 1165

(quoting *Laro v. New Hampshire*, 259 F.3d 1, 13-14 (1st Cir. 2001)) (emphasis in original); *see also*

*Nelson*, 535 F.3d at 321 ("[L]eave for purposes of self-care as opposed to the care of family

members, does not appear to be in response to any nationwide history of gender discrimination that

_____

differently from its family-care provision for the same reasons various circuit courts have done so.
*See infra* this section. In any event, Justice Souter's concurrence was joined by only two Justices
and is not, therefore, a controlling interpretation of the FMLA.

would permit Congress to act under § 5 of the Fourteenth Amendment."). Accordingly, the circuit courts that have considered this issue after *Hibbs* have concluded that "Congress lack[s] the power to legislatively remove the states' immunity" under the self-care leave provision. *Id.*

As noted above, before *Hibbs* was decided, the Fourth Circuit held that Congress exceeded its authority in applying the FMLA to the States. *See supra* n.3 (discussing *Lizzi v. Alexander*). Although *Lizzi* involved self-care leave, the court's rationale was not specific to the self-care provision. Instead, the court addressed congressional authority in more general terms, concluding that Congress "does not have the constitutional power to pass such a sweeping statute on the basis of [gender discrimination]." *Lizzi*, 255 F.3d at 135. As this was the very argument rejected in *Hibbs*, it draws the continued viability of *Lizzi* into question despite the distinctions in the holdings: *Hibbs* having addressed only the family-care provision, while *Lizzi* addressed only the self-care provision. *See generally Shepard v. Irving*, 77 Fed. Appx. 615, 619 n.3 (4th Cir. 2003) (citing *Lizzi* as "overruled in part" by *Hibbs*). Even if *Lizzi* is no longer good law (given its more generalized rationale), however, this court concludes that the Fourth Circuit would agree with the reasoning of other circuit courts that have addressed the self-care provision after *Hibbs*, as explained above. Thus, the court reaches the same result whether it concludes the first holding in *Lizzi* remains binding or whether it predicts how the Fourth Circuit would rule if presented with the issue anew.

Plaintiff has not offered any argument to rebut the reasoning of the post-*Hibbs* decisions of other circuits that have concluded Congress did not validly abrogate the Eleventh Amendment as to the FMLA's self-care provision. Instead, she relies on two unpublished Fourth Circuit cases which contain general statements regarding the applicability of the FMLA to the States post-*Hibbs*. *See* Dkt. No. 32 at 2 (citing *Mezu v. Dolan*, 75 Fed. Appx. 910 (4th Cir. 2003) and *Montgomery v.*

8

*Maryland*, 72 Fed. Appx. 17 (4th Cir. 2003)).  Both of the cited decisions were issued shortly after

the Supreme Court's ruling in *Hibbs* and before most of the other circuits' decisions regarding the

self-care provision.[8]  There is, moreover, no suggestion that the self-care provision was at issue in

either case.  Finally, both *Mezu* and *Montgomery* were dismissed for failure to allege facts sufficient

to support *any* FMLA claim.  *See Mezu*, 75 Fed. Appx. at 913; *Montgomery*, 72 Fed. Appx. at 19.

Thus, any statement regarding application of the Eleventh Amendment to the FMLA in these cases

is *dicta*.  For all of these reasons, the court finds these cases are not persuasive as to how the Fourth

Circuit might rule on whether the Eleventh Amendment was validly abrogated as to the FMLA's

self-care provisions.[9]

### B. Authority of Unpublished Cases

Plaintiff also argues that the Report improperly disregards *Mezu* and *Montgomery* because

they are unpublished.  Dkt. No. 32 at 2 (Pl's Obj. ¶ 3).  In addressing the impact of these cases on

*Lizzi*, the Report states, "These cases, however, are unpublished and thus are not precedential."

Plaintiff correctly points out that Fourth Circuit Appellate Rule 32.1, as amended, disfavors but

permits citation of unpublished opinions and suggests that they may, in some instances, be

---

[8] *Montgomery* was decided before any of the above-cited circuit court decisions.  *Mezu* was decided roughly two weeks after *Brockman*, the earliest of these decisions.

[9] The most significant point in either case is the recognition in *Mezu* that *Hibbs* implicitly overruled *Lizzi* at least to the extent it stood for the broad proposition that "the FMLA did not abrogate a state's Eleventh Amendment immunity from suit."  *Mezu*, 75 Fed. Appx. at 913.  The Fourth Circuit did not, however, address the implied overruling in any detail.  Instead, it merely referenced this point before concluding that Mezu had "failed to allege an FMLA claim upon which relief could be granted in any event." *Id*.  There is no mention of *Lizzi* in *Montgomery*.  The Fourth Circuit has, however, referred to *Hibbs* as partially overruling *Lizzi* in at least one decison: *Shepard*, 77 Fed. Appx. at 619 n.3.  The undersigned has done likewise. *See Thompson v. Univ. of S.C.*, 2006 WL 2583595 *11 (relying on second holding in *Lizzi* in a Title VII action but noting partial overruling by *Hibbs*).

precedential: "If a party believes . . . that an unpublished disposition of this Court issued prior to January 1, 2007, has precedential value in relation to a material issue in a case *and that there is no published opinion that would serve as well*, such disposition may be cited if the requirements of FRAP 32.1(b) are met." 4th Cir. R. App. 32.1 (emphasis added). Therefore, to the extent the Report suggests that unpublished decisions have no precedential value under any circumstances, the court disagrees. Nonetheless, for reasons addressed above, the court finds that *Mezu* and *Montgomery* are neither precedential nor persuasive as to the issues before this court.

### C. Individual-Capacity Claims

Plaintiff also objects to the Report's conclusion that an FMLA claim cannot be brought against Defendants in their individual capacities as supervisors with a public agency. Dkt. No. 32 at 2-3 (Pl.'s Obj. ¶ 4); *see also* Dkt. No. 31 at 11. This conclusion rests on a second holding in *Lizzi* that because the State "enjoys Eleventh Amendment immunity for claims brought under the FMLA, the individual supervisors under the FMLA are protected by that same immunity." 255 F.3d at 138. This holding was based on a determination that the State, as the employer, was the real party in interest, and distinquished claims under 42 U.S.C. § 1983 due to the broader language of that statute.

Plaintiff argues that the definition of "employer" under Section 2611(4) includes individual supervisors with public agencies. Dkt. No. 32 at 2-3 (Pl.'s Obj. ¶ 4). To support this argument, Plaintiff cites four district court cases, primarily from other circuits, which held that state supervisory employees are not immune from suit under the FMLA in their individual capacities. *Id.*; *see Cantley v. Simmons*, 179 F. Supp. 2d 654 (S.D. W. Va. 2002); *see also Hewett v. Willingboro Bd. of Educ.*, 421 F. Supp. 2d 814 (D.N.J. 2006); *Morrow v. Putnam*, 142 F. Supp. 2d 1271 (D. Nev. 2001); *Carter v. United States Postal Serv.*, 157 F. Supp. 2d 726 (W.D. Ky. 2001).

Of these, only *Cantley* is from within the Fourth Circuit, and it fails to address *Lizzi*. *See Cantley*, 79 F. Supp. 2d 654, 656 & n.1. Other courts have reached the opposite conclusion. *See Mitchell v. Chapman*, 343 F.3d 811, 828-32 (6th Cir. 2003) (noting that the district and circuit courts which have addressed the issue have reached divergent results and concluding that the "FMLA's text and structure reveals that the statute does not impose individual liability on public agency employers"), *abrogated in part on other grounds by 14 Penn Plaza LLC v. Pyett*, __ U.S. __, 129 S. Ct. 1456, 1463 n.4 (2009).

Until the Supreme Court or the *en banc* Fourth Circuit articulates a different rule, *Lizzi* remains controlling precedent as to the extension of Eleventh Amendment immunity to supervisory employees of a state who are sued for damages as to claims for which the state, itself, is entitled to Eleventh Amendment immunity. *See McMellon v. United States*, 387 F.3d 329, 332-35 (4th Cir. 2004). Accordingly, in light of the conclusion that the Fourth Circuit would find the Eleventh Amendment bars claims for damages against a state under the self-care provision of the FMLA, the court also dismisses Plaintiff's FMLA claim for damages against the individual Defendants in their individual capacities.

## II.    Defendants Theriot and Kester's Objection

The judicial estoppel argument advanced by Theriot and Kester does not relate to subject matter jurisdiction. Neither may it be resolved by consideration of the complaint alone. Thus, the judicial estoppel argument is not properly before the court given that the pending motion seeks relief only under Rules 12(b)(1) and 12(b)(6). Moreover, this argument was not raised until reply, precluding Plaintiff from having a full opportunity to address the argument. For both reasons, the

11

court declines to address the judicial estoppel argument at this time.[10]

### III.    Matters Not Subject to an Objection

The court has reviewed all remaining aspects of the Report for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). Finding none, the court adopts the Report in all other respects.

### CONCLUSION

For the reasons stated above, the court adopts, with minor modifications noted above, the recommendations and reasoning of the Report. The court therefore dismisses Plaintiff's FMLA claim for monetary damages against all Defendants both in their official and individual capacities and Plaintiff's FMLA claim for injunctive relief against the Lieutenant Governor's Office on Aging ("LGOA") and Defendant Gibbons. Plaintiff's official capacity claims seeking injunctive relief against Defendants Kester and Theriot, however, remain before the court. The matter is, therefore, referred to the magistrate judge for further pretrial proceedings.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
**CAMERON MCGOWAN CURRIE**
**UNITED STATES DISTRICT JUDGE**

**Columbia, South Carolina**
**March 11, 2010**

---

[10]  Defendants may, of course, raise this argument on motion for summary judgment.