IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Rosina C. Brown, ) | C/A No. 3:09-813-CMC-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Anthony Kester, Susan Lifsey Theriot, and ) | |
| Cornelia Gibbons, in their official and individual ) | |
| capacities, ) | |
| Defendants. ) | |
| _____ ) | |

Through this action, Plaintiff, Rosina C. Brown ("Brown"), seeks recovery for alleged violations of her federally protected rights relating to her former employment with the Lieutenant Governor's Office on Aging ("LGOA"). She asserts one claim under 42 U.S.C. § 1983 ("Section 1983") for alleged violation of her rights to free speech and association under the First Amendment to the United States Constitution as well as a claim for retaliation under the self-care provisions of the Family Medical Leave Act ("FMLA").

The matter is before the court on Defendants' motion for summary judgment. For the reasons set forth below and in the Report and Recommendation of the Magistrate Judge, this motion is granted in full.

**PROCEDURAL BACKGROUND**

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(e), (g), DSC, this matter was referred to United States Magistrate Judge Joseph R. McCrorey for pre-trial proceedings and a Report and Recommendation ("Report"). On January 26, 2011, the Magistrate Judge issued a Report recommending that Defendants' motion for summary judgment be granted in full, resolving all claims in Defendants' favor. Dkt. No. 46.

The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Brown filed a timely objection on February 11, 2011. Dkt No. 48. Defendants filed a response to Brown's objection on February 18, 2011. Dkt. No. 49.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

## DISCUSSION

Brown argues that the Report errs in five critical respects, leading to an incorrect recommendation that Defendants' motion be granted. The asserted errors and related recommendations of the Report are addressed, in order, below.

**1.     Nature of Speech**

Brown first argues that the Report errs in concluding that her "speech was made pursuant to her official job duties." *See* Dkt. No. 48 at 1-2. This conclusion is important because speech which is pursuant to official job duties is not subject to protection under the First Amendment. *See* Report at 10-12 (addressing *Garcetti v. Ceballos,* 547 U.S. 410 (2006) and subsequent decisions applying *Garcetti*).

In support of this argument, Brown relies on Exhibit 6 to her response to Defendants' summary judgment motion (Dkt. No. 43-7) which, she maintains, "shows that [her] job description . . . was to 'gather, categorize, enter and maintain a comprehensive automated data base[,]'" and did not require her to evaluate the data collection system itself. *See* Dkt. No. 48 at 1. Based on this characterization of her job description, Brown argues that her comments to her immediate supervisor (raising concerns about the viability and functionality of the database as well as safety concerns related to information being placed into the database) fell outside the scope of her official duties.

This argument focuses, in isolation, on a short statement under the heading "Job Purpose" found on a 2007 job description for a "Program Coordinator I" position in the S.C. Access division of the LGOA ("SC Access"). Dkt. No. 43-7 at 2. Although this is the division to which Brown was assigned, it is not clear that the quoted job description applied to her.[1] Even it if did, the referenced language would not support Brown's position because more detailed "job functions" found on the same page demonstrate that the job required the very sort of feedback Brown maintains constituted protected speech. For example, the listed functions included "provid[ing] assistance . . . regarding

---

[1] The document on which Brown relies is signed by someone other than Brown and is dated October 18, 2007, four months after Brown's employment ended. Brown does not explain why the court should consider this job description rather than the one marked as Exhibit 10 to her deposition which is dated July 29, 2005 and bears Brown's signature following the statement that it was "an accurate and complete description of [her] job." *See* Dkt. No. 49-2 at 2-3; Brown dep. at 66.

the utilization and enhancement of the system to ensure quality and consistency of information entered in to the system," as well as analyzing feedback and "providing reports to the appropriate staff including suggestions for solutions and modifications." *Id.*

The job description actually signed by Brown (*see supra* n.1), likewise, demonstrates that the speech at issue fell within the scope of her official responsibilities. *See* Dkt. No. 49-2 at 2-3. This job description explains the "Job Purpose," in part, as follows: "Review and evaluate policies and standards for capturing and maintaining data and make[] recommendations for enhancing these processes." Dkt. No. 49-2 at 3. It also includes a more detailed listing of "Job Functions" which includes the following statements: (1) "participates in system development and implementation of the statewide I&R system (SC Access) to include identifying needed data elements, search strategies and other functional requirements."; (2) "[a]nalyzes assigned portions of the database and makes recommendations for system and/or procedural enhancements to ensure quality and consistency of information entered into the system"; and (3) "analyzes problems and needs . . . and offers solutions and modifications for fixes and enhancements." *Id.*

Brown also conceded in her deposition that she voiced the relevant concerns to her supervisor, Karen Power-Davis because "[i]t was part of [her] job." Brown dep. at 147. Moreover, while she also testified that the job was "basically data entry and verification of information," she did not, as her objection argues, state that her responsibilities were limited to "only" these duties. *Compare* Brown dep. at 74, 76 *with* Dkt. No. 48 at 1.

For the reasons set forth above, the court finds Brown's arguments as to the nature of her speech to be without merit.

### 2.     Causation

4

Brown next argues that the Report errs in concluding that she failed to proffer sufficient evidence of causation to support her claim that she suffered adverse treatment because of her speech. This conclusion was based, in part, on Brown's failure to provide "dates on which she complained about the Access Program in order to show that her speech preceded the alleged retaliation." Dkt. No. 48 at 2 (quoting Report at 13). Brown argues that her evidence is sufficient because the alleged "acts of retaliation [occurred] after she was moved into SC Access" and "she began advising the Defendants of the problems with the system after she was moved to SC Access." *Id.* at 2-3. That Brown's complaints and the alleged retaliatory treatment all occurred after Brown was moved to SC Access raises no inference as to which occurred first, the complaints or the retaliation. It follows that Brown has failed to proffer evidence even of a temporal link which might support a finding of causation.[2]

Not only has Brown failed to proffer any of evidence of a causative link between her speech and the treatment she deemed retaliatory, but what evidence is available supports a contrary conclusion. For example, there is evidence that the differences in treatment before and after Brown's transfer to SC Access were the result of differences in managerial style between her old and new supervisors or other factors unrelated to the speech on which Brown relies for her First Amendment claim. *See* Report at 13-14; Defendants' response at 5-6. There is also evidence that (1) Brown's reports were met with favorable comments from her supervisor; and (2) other employees made similar reports without adverse consequences. While this collective evidence

---

[2] As Defendants note, Brown has also failed to proffer evidence that two of them were ever made aware of the complaints which Brown argues constitute "protected speech," much less that they treated her less favorably after learning of the complaints.

5

might not be enough to defeat Brown's claims on summary judgment if she presented any evidence raising a reasonable inference of causation, no such evidence has been proffered.

For the reasons set forth above, the court finds Brown's arguments as to causation to be unsupported.

### 3.     Right of Intimate Association

Brown relies on *Cromer v. Brown*, 88 F.3d 1315 (4th Cir. 1996) in arguing that the Report errs in recommending dismissal of her Section 1983 claim to the extent it relies on an alleged violation of her right to freedom of association. The *Cromer* decision did not, however, suggest that employees have a right to associate with co-workers *during working hours*. Unlike the plaintiff in *Cromer*, that is the right Brown is asserting in this case. Thus, this argument is also without merit.

### 4.     Qualified Immunity

Brown's argument as to qualified immunity rests primarily on an assumption that her other arguments persuade the court that her Section 1983 claim should survive, a predicate to finding that her right to relief as to this claim was "clearly established." For reasons stated above, the court does not find Brown's Section 1983 claim viable.

The court agrees with Brown that, in the abstract, her rights to freedom of speech and association are "clearly established." That is not, however, the relevant issue. Instead, the court must consider whether it was clearly established that the particular conduct at issue violated clearly established rights of which a reasonable person would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the present case, the court's determination that the speech on which Brown relies is not protected speech forecloses such a finding. *See DiMeglio v. Haines*, 45 F.3d 790, 804-806 (4th Cir. 1995) (finding it was not clearly established that public employee's speech was

protected when he spoke in his public role and concerning a matter within the scope of his public duties).

For reasons set forth above, the court finds Brown's arguments as to qualified immunity to be unsupported.

**5.     Right to Reinstatement under Family Medical Leave Act**

The Report recommends that summary judgment be granted on Brown's claim for reinstatement under the FMLA because it is undisputed that she can no longer perform the essential functions of the job she was performing when she went on FMLA leave.  Brown argues that the Report errs in focusing on the job she held at the time of her FMLA leave.[3]  She maintains that the court should, instead, consider whether she is now able to perform the duties of the job she held immediately prior to her transfer to SC Access.  This argument rests on a claim that the transfer to SC Access was in retaliation for her submission of a certification that she would need to take intermittent FMLA leave.  Brown further asserts that "[s]he can return and fulfill all of the essential functions" of her earlier position.

In responding to this characterization of Brown's FMLA claim, Defendants note that Brown's transfer to SC Access occurred in June 2005, nearly four years before this action was filed (on March 30, 2009).  As Defendants' note, such a claim would be time barred because it is based on a discrete act which occurred more than three years prior to institution of this action. Dkt. No. 49 at 12-13 (citing, *e.g.*, 29 U.S.C. § 2617(c)(1) (two-year statue of limitations generally applicable to FMLA claims) and (2) (three-year statute of limitations applicable to willful violations); *National*

---

[3]     Brown does not challenge the factual premise that she can no longer perform the duties of the job she held when she went on FMLA leave.

7

*Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (addressing application of statute of limitations to "discrete acts").

The court finds no merit to this aspect of Brown's objection. She effectively concedes the factual premise on which the Report relies, that she can no longer perform her most recent job, while re-characterizing her claim in a manner which would require summary judgment on other grounds. Either way, she cannot prevail, albeit for different reasons.

## CONCLUSION

For the reasons set forth above, the court finds all five arguments in Brown's objection to be without merit. Finding no clear error as to any other aspect of the Report, the court adopts and incorporates the same into this order and grants Defendants' motion for summary judgment in full. The Clerk of Court is directed to enter judgment for Defendants.

**IT IS SO ORDERED.**

                                                       s/ Cameron McGowan Currie
                                                       CAMERON MCGOWAN CURRIE
                                                       UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 28, 2011